IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| LAMONT FITCH | § | |
| VS. | § | CIVIL ACTION NO. 1:22-CV-402 |
| MERRICK B. GARLAND, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Lamont Fitch, a prisoner previously confined at the United States Penitentiary in Beaumont, Texas, proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971),[1] against Merrick B. Garland, Christopher Wray, Michael Carvajal, Kathleen Sawyer, Charles L. Lockett, James Brown, W. Coleman, Gary Venuto, S. Brin, D. Allen, James Pappas, R. Maldonado, J. Tenner, C. Montgomery, FNU Williams, D. Maze, GNU Lindsey, R. Odstecil, C. Simpson, Larry Shults, W.R. Hess, K. Bacote, T. Heidecker, C. Matt, Tanika J. Solomon, and M. Gutierrez.

The action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

---

[1] Plaintiff's Complaint was filed as an Amended Complaint in cause number 1:20-CV-246. The Amended Complaint raised claims under *Bivens* and the Federal Tort Claims Act (FTCA). The court retained the FTCA claims in cause number 1:20-CV-246, and severed the *Bivens* claims into this civil action. (Doc. #1.)

Factual Background[2]

Plaintiff states that he was transferred to the United States Penitentiary on November 13, 2017.  Plaintiff alleges that he was labeled as a "snitch" by Defendants Tenner and Simpson.  (Doc. #2 at 21.)   Plaintiff claims that Defendant Tenner conspired to harass Plaintiff, obstruct his mail, "pitted" other inmates against Plaintiff by calling him a snitch, filed false reports against Plaintiff, and denied him access to the grievance procedure.  (Doc. #2 at 22.)

In December of 2017, Plaintiff alleges Defendant Montgomery began sexually harassing Plaintiff and other inmates by whistling at them "as though they are women."  (Doc. #2 at 22.) Plaintiff claims that Defendant Montgomery recruited Defendant Williams to curse at Plaintiff for asking to go to the commissary.  Plaintiff reminded Defendant Williams that the Bureau of Prisons prohibits correctional officers from using abusive language, and he told her that she was acting like a "Plantation Mistress."  (Doc. #2 at 22.)  Plaintiff alleges Defendants Montgomery and Williams told Inmate Shukri Bakr that Plaintiff had called Defendant Williams a name, and Inmate Bakr tried to get Plaintiff to apologize.  Instead, Plaintiff filed a complaint against the defendants. Plaintiff alleges it was seven months before the complaint was resolved.  (Doc. #2 at 23-24.)

---

[2]  Plaintiff's wide-ranging Complaint involves incidents that took place at multiple prison facilities located across the United States of America between 1988 and 2022. When, as in this case, jurisdiction is not founded solely on diversity of citizenship, 28 U.S.C. § 1391 provides that venue is proper in the judicial district where the defendants reside or in which the claim arose.  The United States Penitentiary in Beaumont, Texas is the only prison facility featured in Plaintiff's Complaint that is located in the Eastern District of Texas.  Thus, this Report and Recommendation only concerns the claims that arose in Beaumont.  Because the other facilities are located outside the Eastern District of Texas, venue is not proper for the claims that arose in other districts.  Under 28 U.S.C. § 1404(a), the district court has the authority to transfer a civil action to any other district where it could have been brought for the convenience of parties and witnesses and in the interest of justice.  Due to the rambling nature of the Complaint, which contains many claims that are likely to be barred by the statute of limitations, the court finds that it is not in the interest of justice to transfer the claims to other venues.  *See Fitch v. Gonzalez*, No. 08-366-GFVT, 2008 WL 11351317, at *5 (E.D. Ky. Nov. 25, 2008) (noting Plaintiff's propensity for filing complaints  naming lengthy lists of Defendants, dismissing the action for failure to state a claim, and warning Plaintiff of the consequences of accumulating three "strikes").  Instead, the claims will be dismissed without prejudice to Plaintiff's ability to re-file those claims in the appropriate districts.

Plaintiff states that he was bullied by other inmates and, as a result, he left the Muslim community at the Beaumont penitentiary. Plaintiff was then transferred to a different building, where Defendants Maze, Lindsey, and Odstecil conspired to pit inmates against Plaintiff. (Doc. #2 at 24.) Plaintiff claims Inmate Bakr tried to place a hit on Plaintiff for the government, and Defendant Maze and Lindsey began calling Plaintiff a snitch. (Doc. #2 at 25.)

Plaintiff alleges staff members in the new building whistled at him, so he filed a complaint on August 18, 2018. (Doc. #2 at 25.)

Plaintiff claims Defendant Simpson tried to have Plaintiff attacked by inmates in the education department while Plaintiff was attending classes. Plaintiff also claimed that Defendant Simpson "performed as an operative of the racial reprisal against [Plaintiff] that originates in New Jersey from public officials. . . ." (Doc. #2 at 25.)

Plaintiff alleges Defendant Maldonado attempted to instigate racial conflict by giving mail to the wrong inmates. Plaintiff states that he complained to Defendant Maldonado, who replied, "So what," and then he "mean-mugged" Plaintiff. (Doc. #2 at 26.) Following the incident, Plaintiff filed a complaint against Defendant Maldonado.

On February 6, 2019, Plaintiff alleges prison employees conspired to retaliate against him by searching his cell, discarding $1,504.70 worth of Plaintiff's property, and planting a weapon in his cell. (Doc. #2 at 26.) Plaintiff reported the weapon, and he was strip searched. (Doc. #2 at 27.) On March 9, 2019, Plaintiff's cell was searched again. Plaintiff and his cell mate were held in shower stalls while the search was taking place, and then Plaintiff was strip searched.

Plaintiff alleges members of the medical staff disclosed his personal medical information to members of the security staff. Plaintiff reported the alleged misconduct. The medical director was later removed from his position at the Beaumont penitentiary. (Doc. #2 at 27.)

Plaintiff reported the alleged retaliation to Defendants Shults and Hess and requested a transfer to a lower security facility. Plaintiff alleges Defendants Odstrecil, Maze, and others conspired to keep Plaintiff at the Beaumont penitentiary "while the plots to attack [him] were in motion." (Doc. #2 at 28.) Plaintiff claims Defendants Osdtrecil and Maze conspired to falsify documents affecting Plaintiff's custody score. (Doc. #2 at 28.) The conspiracy then expanded to target other prisoners associated with Plaintiff, and Plaintiff lodged complaints on their behalf. (Doc. #29-31.)

On August 11, 2019, Plaintiff claims he discovered that he had been poisoned. Plaintiff went on a fast, eating only fruit and rice for fifteen days. (Doc. #2 at 31.) Plaintiff claims prison officials instigated a racial riot on August 16, 2019. (Doc. #2 at 32.) On August 20, 2019, Plaintiff was interviewed regarding an assault on another inmate. Plaintiff alleges the incident was falsely reported as an assault by a prisoner on a correctional officer. Plaintiff told officials from the Department of Homeland Security that the officer had assaulted the inmate and that the assault was on film. At the conclusion of the interview, Plaintiff was instructed not to discuss the interview. (Doc. #2 at 32.) Plaintiff alleges Defendants Shults, Hess, Matt, Lindsey, Tenner, Simpson, and Maldonado falsely claimed Plaintiff was a snitch for cooperating with the investigation. (Doc. #2 at 33.)

In August of 2019, Plaintiff claims former Attorney General William Barr, the Federal Bureau of Investigation, Defendant Sawyer, Defendant Shults, and Defendant Maze placed an

4

informant at the prison to indoctrinate Plaintiff against the administration of former President Donald Trump. (Doc. #2 at 33.) The informant allegedly claimed that he was a reporter for a San Francisco newspaper. Plaintiff agreed to provide the editor of the newspaper a story, and he mailed the editor a tip on October 1, 2019. Plaintiff alleges the editor never received the mail. (Doc. #2 at 33.) Plaintiff claims he was poisoned on October 1, 2019, and he provided the informant with samples of the poison. (Doc. #2 at 34.)

On October 10, 2019, Plaintiff alleges he was attacked by two of his friends while he was having a seizure. (Doc. # at 35.) Plaintiff alleges Defendant Heidecker gave him a false incident report for fighting. Defendant Matt did not deny Plaintiff's claim that he had put a hit on Plaintiff, and he told Plaintiff that there would be another. Plaintiff's property was collected, and he was transferred to an emergency room at a local hospital for medical treatment. (Doc. #2 at 36.) When he was returned to the prison, Plaintiff was housed in a cell with the alleged informant. (Doc. #2 at 37.) The informant told Plaintiff that there was a hit on Plaintiff because he had been labeled as a snitch. Plaintiff alleges he later found out that his medical records were falsified to hide the extent of his injuries. (Doc. #2 at 38.)

Plaintiff was interviewed by someone from the Office of the Inspector General on October 17, 2019, and he reported instances of alleged misconduct. When Plaintiff returned to his cell, his property had been stolen. (Doc. #2 at 39.)

Plaintiff's disciplinary hearing for the fighting infraction took place on October 25, 2019. Plaintiff alleges the charge was dismissed, but Defendant Bacote falsely stated on the written report that Plaintiff had claimed he was assaulted. (Doc. #2 at 40.) Plaintiff alleges the false disciplinary

report was later circulated at the penitentiary in Beaumont and at another penitentiary. (Doc. #2 at 40.)

Plaintiff alleges the informant introduced Plaintiff to a lawyer, Defendant Solomon, who allegedly withheld evidence of misconduct of the administration of former President Barack Obama that "violated [his] rights and threatened [his] life." (Doc. #2 at 41.) Plaintiff claims Defendant Solomon conspired to deny Plaintiff access to the courts. (Doc. #2 at 42.)

On November 25, 2019, Plaintiff was transferred from the Beaumont penitentiary to the Federal Transfer Center in Oklahoma. (Doc. #2 at 43.)

Standard of Review

An *in forma pauperis* proceeding may be dismissed pursuant to 28 U.S.C. § 1915(e) if it: (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted or (3) seeks monetary relief from a defendant who is immune from such relief.

A complaint, containing as it does both factual allegations and legal conclusions, is frivolous if it lacks an arguable basis either in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). A complaint lacks an arguable basis in law if it is based on a clearly meritless legal theory. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

A complaint does not need to contain detailed factual allegations, but the plaintiff must allege sufficient facts to show more than a speculative right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate if the complaint does not

include enough facts to state a claim that is plausible on its face. *Id*. at 570. Conclusory allegations and a formulaic recitation of the elements of a cause of action will not suffice to prevent dismissal for failure to state a claim. *Id*. at 555. The plaintiff must plead facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Analysis

A victim who has suffered a constitutional violation by a federal actor may, in some instances, recover damages in federal court. *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971). Title 42 U.S.C. § 1983 allows individuals to sue for money damages when their constitutional rights are violated by state officials, but there is no analogous statute allowing individuals to recover damages for violations of their constitutional rights by federal officials. *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). An individual's right to recover damages from federal officials for violations of constitutional rights was first recognized by the United States Supreme Court in *Bivens*, 403 U.S. at 395-97. In *Bivens*, the plaintiff alleged that federal agents entered and searched his apartment without a warrant and arrested him on a narcotics charge, and that all of these actions were taken without probable cause. *Bivens*, 403 U.S. at 389. The Supreme Court held that there was an implied cause of action for damages under the Fourth Amendment for alleged violations of the plaintiff's right to be free from unreasonable searches and seizures by federal officials. *Id*. at 397. The Supreme Court subsequently extended *Bivens* to create implied causes of action for gender discrimination under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979), and for failing to provide adequate medical treatment as

required by the Cruel and Unusual Punishment Clause of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980).

*Bivens*, *Davis*, and *Carlson* were decided during a time when the Supreme Court "would imply causes of action not explicit in the statutory text itself" in order to provide a remedy to effectuate the statute's purpose. *Abbasi*, 137 S. Ct. at 1855. Under this judicial approach, it was possible that *Bivens* could be expanded to allow causes of action against federal officials for every constitutional cause of action against state officials permitted by § 1983. *Id*. In later cases, the Supreme Court took a more measured approach to implying causes of action for damages, and "the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id*. at 1855-57 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Over the past forty years, the Supreme Court has repeatedly declined to extend *Bivens* to allow new constitutional claims. *Hernandez v. Mesa*, __ U.S. __ , 140 S. Ct. 735, 743 (2020).

In light of the Supreme Court's current approach to such cases, federal courts must now engage in a two-step inquiry when deciding whether to extend *Bivens* to new cases. *Id*. First, the court must determine whether the request to extend *Bivens* "involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Id*. (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)); *see also Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) (noting that the court must first determine whether the plaintiff's claims "fall into one of the three existing *Bivens* actions). A case presents a new context if it is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court. *Abbasi*, 137 S. Ct. at 1860. The Supreme Court provided the following, non-exhaustive list of cases that present meaningful differences:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the

8

> extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*.

Second, if the claim does arise in a new context, the court must consider whether there are "special factors" that counsel hesitation about extending *Bivens*. *Id*. Special factors may include, but are not limited to: the availability of a statutory cause of action; the length of time Congress has had to create a *Bivens*-like cause of action for that particular context, and the underlying nature of the federal official's activity. *Cantú*, 933 F.3d at 422. If there are special factors, then the court should not extend *Bivens*. *Abbasi*, 137 S. Ct. at 1860; *see also Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020) (noting that courts must refrain from creating an implied cause of action if any special factors exist).

Plaintiff's claims are new contexts because the Supreme Court has not previously recognized an implied cause of action for any of the claims related to Plaintiff's confinement at the Beaumont penitentiary. In this instance, there are special factors counseling hesitation in extending *Bivens* to create new causes of action for Plaintiff's claims, including the availability of other remedies. First, the Bureau of Prisons's administrative remedy procedure provides an alternate method of relief. *Watkins v. Carter*, No. 20-40234, 2021 WL 4533206, at *2 (5th Cir. Oct. 4, 2021) (noting that the BOP's Administrative Remedy Program provides an alternative method of relief to a *Bivens* action). In some cases, the Federal Tort Claims Act also provides an avenue to pursue monetary claims for damages for negligent or wrongful acts committed by government employees. *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021). Finally, the separation of powers is another special factor

weighing against extending *Bivens* because Congress has had the occasion to consider prisoner rights, but has not legislated to extend the reach of *Bivens*. *See e.g., Watkins v. Three Admin. Remedy Coordinators*, 998 F.3d 682, 685-86 (5th Cir. 2021) (declining to extend *Bivens* to include a First Amendment claim of retaliation).

Because there is at least one other avenue of relief through the Administrative Remedy Program and Congress has not legislated to extend *Bivens* beyond the three causes of action previously recognized by the Supreme Court, Plaintiff does not have viable claims under *Bivens* against the individual defendants. Thus, this action should be dismissed for failure to state a claim upon which relief may be granted.

## Recommendation

This civil rights action should be dismissed pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief may be granted.

## Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by

the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 2nd day of June, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE